IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE COCA-COLA COMPANY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE O-COMPANY N.V.,<br><br>　　　　Defendant. | Case No. 3:08-CV-0745<br><br>Chief Judge Campbell<br>Magistrate Judge Griffin |
| THE O-COMPANY N.V., a Netherlands corporation,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>THE COCA-COLA COMPANY, a Delaware corporation,<br><br>　　　　Counterclaim-Defendant. | |

**PLAINTIFF THE COCA-COLA COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO REQUESTS FOR ADMISSION**

- REDACTED PUBLIC VERSION -

## I. INTRODUCTION

Defendant and Counterclaimant The O-Company N.V. ("O-Company") accuses Plaintiff The Coca-Cola Company ("TCCC") of trademark infringement based upon O-Company's alleged rights in the "trade dress" of its OGO-brand bottled water. The trade dress and marketing scheme for O-Company's bottled water center on the claim that the water contains "35X More Oxygen" than normal water. According to O-Company, its "oxygenated" water acts like a miracle drug: it supposedly reduces skin wrinkles, helps athletic performance, eliminates toxins, and even metabolizes fats. O-Company's trade dress, and its accompanying marketing and promotional materials for its bottled water, focus almost exclusively on the "35X More Oxygen" claim and the water's purported health benefits.

But there is a serious problem with O-Company's claims: they're patently false and O-Company has been concealing the truth to consumers. Many scientists question whether water can actually be "oxygenated" in the first place. Even if it can, it is widely believed that the vast majority of oxygen contained in the water escapes once the cap is opened. Because one's digestive system is not designed for oxygen absorption (that's what the lungs are for), any oxygen that remains will simply pass through the drinker's system. Even if a small amount of oxygen were to survive all of these hurdles and make it into one's bloodstream, a number of studies specifically refute O-Company's claims that this oxygen can affect one's body or mind.

REDACTED

TCCC contends that O-Company's false advertising in connection with the marketing of its trade dress and oxygenated water product constitutes unclean hands, which is a well-recognized defense to equitable relief in trademark infringement cases. O-Company's conduct is also relevant to the question of whether O-Company has acquired valid trademark rights, because a trademark plaintiff's use in commerce must be lawful. The false advertising is also relevant to whether O-

Company has suffered any damages in this case, for TCCC believes that O-Company's lack of success in the United States is O-Company's own doing, REDACTED and not due to any sales or marketing of the Coca-Cola® Christmas Ornament bottle at Wal-Mart.

O-Company, however, has refused to respond to TCCC's document requests and requests for admissions on these issues. O-Company's objections are clearly without merit and should be overruled. The only question here is whether the propounded discovery is relevant to the issues raised in this case. Clearly, the discovery is. While it may be uncomfortable for O-Company to have its unsubstantiated health claims exposed, that is not a valid basis to avoid discovery obligations in this case.

**II.     O-COMPANY'S MISLEADING AND UNSUBSTANTIATED HEALTH CLAIMS**

O-Company has consistently advertised and promoted its "oxygenated" water products in a way that is misleading to the public. Its trade dress contains the phrases "OXYGEN WATER" and "35X MORE OXYGEN." *See* supporting Decl. of Robert N. Phillips ("Phillips Decl.") at ¶ 4, Exh. A. The following is a list of specific claims contained in O-Company's promotional materials regarding the purported health benefits of its water products:

- Eliminates toxins
- Maintains and stimulates the immune system
- Accelerates healing
- Delays the aging process
- Makes the skin look healthier and makes wrinkles less apparent
- Improves brain functions
- Creates energy
- Helps digest food
- Metabolizes fats
- Improves concentration and reflexes
- Helps combat the effects of fatigue and jetlag

- Helps athletic performance
- Helps reduce the effects of excess alcohol
- Improves blood circulation

*Id.,* ¶ 5, Exh. B. O-Company provided these health claims to magazines and potential distributors to aid in the sale of its water products. *See id*. Indeed, O-Company has created its entire marketing scheme centered around the purported mental and physical benefits of its "oxygenated" water. *See id*.

The prevailing opinion among scientists is that "oxygenated" water provides <u>none</u> of these alleged benefits. One PhD describes the purported benefits of drinking "oxygenated" water as "pure fraud without a physiologic foundation." *Id*., ¶ 6, Exh. C. Another doctor notes that any oxygen absorbed through drinking would "have a negligible effect viscerally or on systemic oxygen delivery," and that a single breath of fresh air contained more oxygen than the five oxygenated water products the doctor tested. Numerous studies have concluded that, contrary to O-Company's claims, "oxygenated" water does not increase athletic performance. *Id*.

REDACTED

*Id.*, ¶¶ 7, 8; Exhs. D at p. 59, E at p. 77.    REDACTED

*Id*., ¶ 9, Exh. F.    REDACTED    O-Company continues to use health claims to market its bottled water. *See id*., ¶ 5, Exh. B.

### III. DISCOVERY REQUESTS AT ISSUE

As a result of O-Company's fraudulent health claims in connection with the advertising and marketing of its asserted beverage, TCCC has pled the affirmative defense of unclean hands, and propounded numerous discovery requests seeking information regarding the claims. Docket No. 36, p. 7.

The specific Requests and Responses at issue in this motion are as follows:

**TCCC's First Set of Requests for Production of Documents Nos. 62-64:**

No. 62: All documents referring or relating to any statements O-Company or OGO USA has made regarding the physical or mental effects a person may experience as a result of consuming any product O-Company has marketed or sold using the OGO BOTTLE.

No. 63: All documents referring or relating to the truth or falsity of any statements O-Company or OGO USA has made regarding the physical or mental effects a person may experience as a result of consuming any product O-Company has marketed or sold using the OGO BOTTLE.

No. 64: All studies, journals and scientific evidence supporting the truth of or demonstrating the falsity of any statement O-Company or OGO USA has made regarding the physical or mental effects a person may experience as a result of consuming any product O-Company has marketed or sold using the OGO BOTTLE.

Phillips Decl., ¶ 10, Exh. G.

**O-Company's Objections:**

Overbroad, unduly burdensome, irrelevant, seeking documents outside O-Company's control, vague and ambiguous, seeking confidential information. (Same objections for each of the above Requests for Production). *Id*., ¶ 11, Exh. H.

**TCCC's First Set of Requests for Admission Nos. 74-86, 88:**

No. 74: Admit that OGO WATER PRODUCTS do not boost metabolism anymore than non-oxygenated water products.

No. 75: Admit that OGO WATER PRODUCTS do not combat the effects of pollution any more than non-oxygenated water products.

No. 76: Admit that OGO WATER PRODUCTS do not combat the effects of toxins any more than non-oxygenated water products.

No. 77: Admit that OGO WATER PRODUCTS do not combat the effects of stress anymore than non-oxygenated water products.

No. 78: Admit that OGO WATER PRODUCTS do not make people more alert than non-oxygenated water products.

No. 79: Admit that OGO WATER PRODUCTS do not make people feel any better than non-oxygenated water products.

No. 80: Admit that OGO WATER PRODUCTS do not boost metabolism any more than non-oxygenated water products.

No. 81: Admit that the intestine is not designed for gas exchange.

No. 82: Admit that YOU have represented that OGO WATER PRODUCTS help people recover from fatigue.

No. 84: Admit that OGO WATER PRODUCTS do not help people recover from fatigue any more than non-oxygenated water products.

No. 85: Admit that YOU have represented that OGO WATER PRODUCTS can increase athletic performance.

No. 86: Admit that OGO WATER PRODUCTS do not increase athletic performance any more than non-oxygenated water products.

No. 88: Admit that OGO WATER PRODUCTS do not reduce muscle soreness after working out any more than non-oxygenated water products.

Phillips Decl., ¶ 12, Exh. I.

### O-Company's Objections:

Irrelevant, vague and ambiguous. (Same objections for each of the above Requests for Admission). *Id.*, ¶ 13, Exh. J.

The parties met and conferred on these requests by telephone, e-mail, and letter, but O-Company has refused to withdraw its objections. *Id., ¶* 14.

IV. **ARGUMENT**

    A. **Discovery Related To O-Company's False Advertising Is Relevant To TCCC's Unclean Hands Defense**

The above discovery requests all seek information regarding claims O-Company has made regarding the health benefits of its bottled water products.     **REDACTED**

TCCC has the right to take discovery on this issue in order to develop its unclean hands affirmative defense, as well as its theories on causation of O-Company's alleged damages.

Absent a claim of privilege, this Court can compel discovery concerning any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery under the federal rules is "quite broad . . . broader than permitted at trial." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal citations omitted).

Unclean hands is a defense to a Lanham Act trademark infringement suit. *Japan Telecom. Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:44 (4th ed. 1996). False or misleading advertising by a trademark holder can give rise to an unclean hands defense. This was first recognized by the United States Supreme Court long ago, when it stated that "[i]t is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation, and if he makes any material false statement in connection with the property he seeks to protect, he loses his right to claim the assistance of a court of equity." *Worden v. California Fig Syrup Co.*, 187 U.S. 516, 528 (1903); *see also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir.1995).

A number of courts have applied the unclean hands defense under circumstances that are remarkably similar to the facts presented here. For example, in the trademark infringement case *Channell Chemical Co. v. E.W. Hayden Co.*, 222 F. 162, 164 (N.D. Ohio 1915), the complainant had made numerous false statements regarding its O-Cedar Polish, namely that it acted as a "varnish renewer and rejuvenator" and comprised "a vegetable compound [that] mixes freely with water." The court found these statements to be deceptive advertising, and therefore barred complainant from obtaining any injunctive relief in support of its O-Cedar trademark.

Similarly, in *Strey v. Devine's, Inc.*, 217 F.2d 187, (7th Cir. 1954), the Seventh Circuit Court of Appeals upheld the district court's decision to deny Plaintiff relief based on its unclean hands. In that case, the plaintiff, owner of the trademark "Kule-Fut," falsely held himself out to be a doctor, and

-6-

Case 3:08-cv-00745 Document 75 Filed 04/15/09 Page 7 of 12 PageID #: 965
DM_US:22052443_1

fraudulently represented that the Kule-Fut cream could heal various ailments. *Id*. at 189. The court held that this false advertising constituted unclean hands, and that it was a valid basis to deny Plaintiff's claims for trademark infringement and unfair competition. *Id*. ("an important element under the trade-mark law and the law of unfair competition is that the public should be protected from fraud and deceit.").

More recently, other courts have found that false advertising regarding the nature of a party's product or service that is the subject of a trademark infringement claim can support an unclean hands defense. In *McCormick v. Cohn*, 1992 U.S. Dist. LEXIS 21187 (S.D. Cal. 1992), plaintiff, which was trying to enforce trademark rights in the name "Real Estate Rehab Group, Ltd.," committed "consumer fraud" by employing instructors with no actual real estate experience and hiring individuals who had not taken Plaintiff's seminar but who were paid to recommend the seminar to interested students. *Id*. at *13. Like O-Company in this case, the plaintiff in *McCormick* created a scheme to mislead consumers regarding the nature of the services offered under its trademarked name. The plaintiff's trademark and unfair competition claims in *McCormick* were barred due to the publication of "misleading material . . . intended to mislead the public." *Id*. at *13-*14. The same result should occur here, but O-Company's withholding of discovery on the issue threatens TCCC's ability to prove a defense it is entitled to make.

Directly on point to this motion to compel, the court in *Cytosport, Inc. v. Nature's Best, Inc.*, 2007 U.S. Dist. LEXIS 29039, n. 1 (E.D. Cal. 2007) held that defendant was entitled to discovery regarding plaintiff's false advertising due to its relevance to defendant's unclean hands defense. In *Cytosport*, plaintiff claimed the defendant infringed plaintiff's "Muscle Milk" trademark. *Id*. at * 2. Defendant alleged that plaintiff had unclean hands due to various false statements it made about its product, including "lean muscle formula," "carb conscious," and "burn fat don't store it." *Id*. at *9-*11. The court held that, "without commenting on the merits of the unclean hands defense," the defendant "is entitled to gather discovery relevant to it." *Id*. at n.1.

Likewise, at this stage in the case, TCCC is entitled to discovery relevant to its unclean hands defense. It will be up to the trial court to determine whether the evidence discovered is admissible and

-7-

whether the defense should ultimately prevail. TCCC has raised the defense, and is entitled to pursue discovery in support of the defense.

O-Company argued during meet and confer discussions that since its health claims only pertain to the contents of the bottle, as opposed to the bottle itself, it cannot be guilty of unclean hands. This argument is without merit because O-Company's false advertising is inextricably linked to its alleged trade dress. O-Company has created a comprehensive deceptive marketing scheme in support of the product for which it seeks trade dress protection. O-Company consistently displays its alleged trade dress in the same promotional materials in which it includes its false advertising, misleading the public into believing that "oxygenated" water can cure disease and alter one's appearance. O-Company's alleged trade dress itself is also part of its deceptive marketing system - the terms "OXYGEN WATER" and "35X MORE OXYGEN" appear right on the bottle.[1] Phillips Decl., ¶ 4, Exh. A. As in each of the cases cited above, O-Company has made numerous false statements in connection with the property it now seeks to protect, *i.e.* its bottle of oxygenated water. Therefore, TCCC's discovery requests are clearly relevant to the unclean hands defense and O-Company should be ordered to respond accordingly.

### B. TCCC's Discovery Requests Are Also Relevant to Other Issues in this Case

TCCC's discovery requests directed at O-Company's misleading promotional scheme is also relevant to two other issues in this case: 1) whether O-Company has made unlawful use in commerce of its alleged trade dress, and 2) whether O-Company has suffered any damages.

#### 1. Trademark Rights Only Accrue From Lawful Use in Commerce

It is well settled that "use in commerce only creates trademark rights when the use is *lawful*." *CreAgri, Inc. v. Usana Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (emphasis in original) (affirming district court's grant of summary judgment dismissing plaintiff's trademark infringement action because plaintiff's trademark registration was based on use in violation of FDA regulations); *S.*

---

[1] Indeed, O-Company has admitted that the bottle's round shape reflects the "O" in "$O_2$," the elemental symbol for oxygen. Phillips Decl., ¶ 15, Exh. K. Also, the bottle has been referred to as an "oxygen bubble." *Id*. at ¶¶ 5, 16; Exhs. B at pp. 16, 20, 26; L.

-8-

*Industries, Inc. v. Echolab, Inc*, 1999 U.S. Dist. LEXIS 3484, n. 3 (N.D. Ill.1999) (plaintiff's use of its trademarked pesticide product without a valid license was unlawful and therefore "cannot be the basis for enforcing trademark ownership rights."); *Intrawest Financial Corp. v. W. National Bank of Denver, N.A.*, 610 F. Supp. 950, 959 (D. Colo. 1985) (no trademark rights acquired when mark used in violation of national banking laws). TCCC's discovery is relevant to whether O-Company has violated FDA or other consumer protection laws in the labeling of its product, and therefore whether O-Company lacks trade dress rights because it has only made unlawful use in commerce.

### 2. TCCC's Discovery is Also Relevant to O-Company's Damages Claims

O-Company claims that TCCC's sale of its Coca-Cola® Christmas Ornament bottle at Wal-Mart stores has damaged the value of O-Company's trade dress and has caused O-Company to lose sales of its "oxygenated" bottled water. Phillips Decl., ¶ 17, Exh. M. TCCC contends that O-Company's scant U.S. sales were due in large part to the public's distrust of its advertising campaign touting the mental and physical benefits of its product.       REDACTED

*Id.*, ¶ 9, Exh. F. Discovery into O-Company's false and misleading advertising is therefore relevant to help rebut O-Company's damages claims.

## V. CONCLUSION

TCCC has propounded narrowly tailored discovery requests that relate to a relevant affirmative defense and other issues in the case. TCCC is entitled the opportunity through discovery to further substantiate what several of O-Company's documents already reveal as its knowing misrepresentations in the promotion of its OGO water product that is the basis of its claims against TCCC. For the foregoing reasons, the court is urged to grant TCCC's Motion to Compel to fully respond, without objection, to Request for Production of Documents Nos. 62-64 and Requests for Admission Nos. 74-86, 88.

Dated: April 15, 2009

                  */s/ Robert N. Phillips*
                  Robert N. Phillips
                  (*pro hac vice* motion granted)

Seth Herring
(*pro hac vice* motion pending)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105-2708
Tel.: (415) 848-4900
Fax: (415) 848-4999
phillipsr@howrey.com

Robb S. Harvey (BPR No. 011519)
Richard G. Sanders, Jr. (BPR No. 023875)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, Tennessee 32719-8699
Tel.: (615) 244-6380
Fax: (615) 244-6804
Walter.Crouch@wallerlaw.com
Robb.Harvey@wallerlaw.com

*Attorneys for Plaintiff and Counterclaim-Defendant THE COCA-COLA COMPANY*

CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2009, a true and correct copy of the foregoing was filed electronically by the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                                                */s/ Robert N. Phillips*
                                                                 Robert N. Phillips