McCarthy on Trademarks and Unfair Competition, Fourth Edition
Database updated June 2009

J. Thomas McCarthy

Chapter 29. International Aspects of Trademark Law
I. INTERNATIONAL OWNERSHIP

References

# § 29:1. World priority—Territoriality principle

## West's Key Number Digest

West's Key Number Digest, Trademarks ⚷1138

Under the territoriality doctrine, a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark.[FN1] The contrary approach is the "universality" theory, which posits that a mark signifies the same source wherever the mark is used in the world.[FN2]

In the United States, the rule of territoriality of marks "is basic to American trademark law."[FN3] Thus, the theory of universality is rejected in the U.S.[FN4]

The territoriality principle is sometimes applied to "gray market" imports disputes.[FN5] When seeking to prevent the importation of "genuine goods" or gray market imports, a U.S. importer who has been assigned U.S. ownership of the mark of a foreign manufacturer will argue the "territoriality" principle to justify the separate identity of the mark in the United States.[FN6] As Judge Leval of the federal court in New York observed in a gray market import case:

Since Holmes' decision [in A. Bourjois & Co. v. Katzel, 260 U.S. 689, 67 L. Ed. 464, 43 S. Ct. 244, 26 A.L.R. 567 (1923)], the universality principle has faded and has been generally supplanted by the principle of "territoriality," upon which the Bourjois rulings were based. This principle recognizes that a trademark has a separate legal existence under each country's laws, and that its proper lawful function is not necessarily to specify the origin or manufacture of a good (although it may incidentally do that), but rather to symbolize the domestic goodwill of the domestic mark-holder so that the consuming public may rely with an expectation of consistency on the domestic reputation earned for the mark by its owner, and the owner of the mark may be confident that his goodwill and reputation (the value of the mark) will not be injured through use of the mark by others in domestic commerce.[FN7]

The United States is a member of the Paris Union as a signatory of the Paris Convention,[FN8] Article 6(3) of which states that: "A mark duly registered in a country of the [Paris] Union shall be regarded as independent of marks registered in other countries of the Union, including the country of origin." United States adherence to the Paris Convention has been viewed as committing U.S. law to the principle of territoriality embodied in Article 6(3).[FN9] But the Pan-American Convention has been viewed as creating a limited exception to the doctrine of territoriality.[FN10]

The Paris Convention also provides that a mark and its good will can be validly assigned as to only one nation by the transfer of the right to sell the marked goods in one nation together with "that portion of the business or goodwill located in that country." [FN11] Thus, the Paris Convention recognizes that a U.S. registered trademark for

foreign-made goods can have a separate legal existence in the United States and that this separate mark and its good will are assignable. That is, manufacturer Alpha may own the mark in France, but exclusive importer Zeta may own the mark in the United States, if it is validly assigned by Alpha.[FN12] Similarly, a U.S. company with international operations may split the company territorially and sell off the international part of its business, retaining only the domestic portion.[FN13]

Applying the territoriality principle to the issue of priority of use in the United States, the Fifth Circuit observed:

[Plaintiff] correctly assigns as error the trial court's admission of evidence of the parties' foreign trademark usage and occurrences. The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme. ... "It is well settled that foreign use is ineffectual to create trademark rights in the United States." ... It is equally well settled that "when trademark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trademark rights of the parties are irrele vant and inadmissible."[FN14]

But the territoriality principle has been criticized as obsolete in a world market where information products like computer programs cannot be located at a particular spot on the globe.[FN15]

---

[FN1] Person's Co. v. Christman, 900 F.2d 1565, 14 U.S.P.Q.2d 1477 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme."); Buti v. Perosa, S.R.L., 139 F.3d 98, 45 U.S.P.Q.2d 1985 (2d Cir. 1998) (applying the territoriality rule to service marks). *See* 2 Ladas, *Patents, Trademarks and Related Rights: National and International Protection* § 732 (1975).

[FN2] Restatement Third, Unfair Competition § 24, comment f (1995) ("The premise of the universality principle that trademarks necessarily identify the original manufacturer has been rejected in our domestic law.").

[FN3] ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 155, 82 U.S.P.Q.2d 1414, 1426, 2007-1 Trade Cas. (CCH) ¶75672 (2d Cir. 2007) ("The principle of territoriality is basic to American trademark law."), certified question of state law answered, 9 N.Y.3d 467, 850 N.Y.S.2d 366, 880 N.E.2d 852 (2007), on remand 518 F.3d 159, 86 U.S.P.Q.2d 1115 (2d Cir. 2008).

[FN4] American Circuit Breaker Corp. v. Oregon Breakers Inc., 406 F.3d 577, 27 Int'l Trade Rep. (BNA) 1602, 74 U.S.P.Q.2d 1607 (9th Cir. 2005) (the 1923 Supreme Court *Katzel* decision "marked a dramatic change in trademark law by adopting the principle of 'territoriality' of trademarks and moving away from the rule of 'universality' ").

[FN5] *See* Hiebert, "Foundations of the Law of Parallel Importation: Duality and Universality in Nineteenth Century Trademark Law," 80 Trademark Rep. 483 (1990) (explores the historical foundations for the competing theories of "territoriality" and "universality" of trademarks).

[FN6] *See* §§ 29:48 to 29:51.

[FN7] Osawa & Co. v. B & H Photo, 589 F. Supp. 1163, 1171, 223 U.S.P.Q. 124, 130 (S.D.N.Y. 1984). *Accord*: American Circuit Breaker Corp. v. Oregon Breakers Inc., 406 F.3d 577, 27 Int'l Trade Rep. 1602, 74 U.S.P.Q.2d 1607 (9th Cir. 2005) (the Supreme

Court *Katzel* decision "marked a dramatic change in trademark law by adopting the principle of 'territoriality' of trademarks and moving away from the rule of 'universality' ").

[FN8] *See* § 29:25.

[FN9] Weil Ceramics & Glass, Inc. v. Dash, 878 F.2d 659, 679, 11 U.S.P.Q.2d 1001, 1017 (3d Cir. 1989), cert. denied, 493 U.S. 853, 107 L. Ed. 2d 114, 110 S. Ct. 156 (1989) (Becker, J., concurring); International Cafe, S.A.L. v. Hard Rock Cafe Intern. (U.S.A.), Inc., 252 F.3d 1274, 58 U.S.P.Q.2d 1925 (11th Cir. 2001) ("[T]he Paris Convention, as incorporated by the Lanham Act, is premised on the idea that each nation's law should have only territorial application.").

[FN10] British-American Tobacco Co. Limited and Tabacalera Ist mens, S.A. V. Philip Morris Inc., 55 U.S.P.Q.2d 1585, 2000 WL 1005433 (T.T.A.B. 2000) (the Pan-American Convention is self-executing, independent of the Lanham Act and gives the Trademark Board the jurisdiction to cancel a registration for being in violation of the Convention).

[FN11] Paris Convention, Article 6 quater.

[FN12] *See* discussion at § 29:8.

[FN13] *See, e.g.,* Hilton International Co. v. Hilton Hotels Corp., 888 F. Supp. 520 (S.D.N.Y. 1995) (In 1964 Hilton (HI) sold off the international portion of its HILTON hotel chain to HHC. The parties often cooperated and maintained a joint reservation service. In a dispute over HI's operation abroad of CONRAD hotels the court noted: "Neither the consuming public nor the travel trade distinguished betwen HI and HHC. HI and HHC were perceived as a single worldwide organization." 888 F. Supp. at 525.).

[FN14] Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 599, 225 U.S.P.Q. 540, 546 (5th Cir. 1985), reh'g denied, en banc, 761 F.2d 695 (5th Cir. 1985).

[FN15] M. Leaffer, "The New World of International Trademark Law," 2 Marquette I.P. L. Rev. 1, 28 (1998) ("[T]he territorial model of trademark law in such a world is an anachronism and, from a practical standpoint, hardly exists in its pure form."). G.B. Dinwoodie, Trademarks and Territory: Detaching Trademark Law from the Nation-State, 41 Houston L. Rev. 885 (2004) (criticizing the principle of territoriality on four grounds).

Westlaw. © 2009 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

MCCARTHY § 29:1

END OF DOCUMENT